## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON DIVISION
_____

**MORGAN KEEGAN & COMPANY, INC.**

     **Plaintiff**,

**vs.**                                         **Case No. 3:11-cv-638-DPJ-FKB**

**YGONDINE W. STURDIVANT and**
**MIKE P. STURDIVANT,**

     **Defendants.**
_____

### MORGAN KEEGAN'S MEMORANDUM IN SUPPORT OF ITS
### PETITION TO CONFIRM FINRA ARBITRATION AWARD
_____

Pursuant to the Court's Scheduling Order, Plaintiff, Morgan Keegan & Company, Inc.

("Morgan Keegan" or "Plaintiff"), respectfully submits this Memorandum in support of its

Petition to Confirm FINRA Arbitration Award and states as follows:

## I.       __INTRODUCTION__

Section 9 of the Federal Arbitration Act specifies that on application, a court "__must__"

confirm an arbitration award "unless the award is vacated, modified or corrected". 9 U.S.C. § 9

(emphasis added.) Here, despite Defendants' cross-petition, there is no basis for vacatur.

Judicial review of an arbitration award is "exceedingly deferential." *American Laser*

*Vision, P.A. v. Laser Vision Institute, LLC*, 487 F.3d 255, 258 (5th Cir. 2007) (quoting *Brown v.*

*Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003)). In fact, a court's review of an arbitration award

has been described as "'one of the narrowest standards of judicial review in all of American

jurisprudence.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)

(*quoting Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002)). Under

such an exacting standard of review, Ygondine Sturdivant and Mike Sturdivant ("Defendants" or

"the Sturdivants") have simply offered no basis to vacate the decision of the arbitrators, who

found in favor of Morgan Keegan and against Defendants.  Consequently, the arbitration award

should be confirmed.

## II.      BACKGROUND

The Sturdivants, an uber-wealthy family from Mississippi worth more than $100 million,

invested a small amount (relatively speaking) of their significant net worth in a group of high

yield, junk bond funds ("RMK Funds" or "Funds")[1] at Morgan Keegan from 2004-2008.  During

2007 and 2008, the Sturdivants' RMK Funds holdings at Morgan Keegan declined in value.

In an effort to recover their claimed losses, and in accordance with the parties' arbitration

agreements, the Sturdivants filed an arbitration claim against Morgan Keegan with the Financial

Industry Regulatory Authority ("FINRA") asserting various causes of action, including alleging

that the RMK Funds were unsuitable for them and that Morgan Keegan misrepresented the RMK

Funds to them as "safe".  (*See* Affidavit of John T. Moses ("Moses Aff."), Ex. 1 at ¶¶ 17, 35 and

85.)  Morgan Keegan denied liability of any kind, asserting, among other things, that there were

no misrepresentations regarding the RMK Funds; that the Funds were suitable investments for

the Sturdivants based on their expressed and established financial means, goals and desires; and

that as a matter of law, Morgan Keegan could not be held responsible for the Sturdivants' Funds

losses because those losses were not caused by anything Morgan Keegan did or did not do but,

rather, were the result of the liquidity and credit crises that affected virtually every segment of

---

[1] The Funds at issue in the arbitration were the Morgan Keegan Select High Income Fund; the RMK Strategic Income Fund; the RMK High Income Fund; the RMK Advantage Income Fund; and the RMK Multi-Sector High Income Fund.  The Sturdivants had no more than 6-6.5% of their net worth in the Funds.  (*See* Moses Aff.,  Ex. 2, Excerpts of Hearing Transcript, Vol. 2, at p. 449:17-22.)

the U.S. and world economies, with the major indices (including the S&P and Dow Jones Industrial) experiencing record declines.

The Sturdivants and Morgan Keegan arbitrated their dispute in Jackson, Mississippi during the week of September 26, 2011, before a duly appointed, three-person FINRA arbitration panel ("the Panel")[2], which the Sturdivants participated in selecting and which the Sturdivants affirmatively accepted at the hearing without objection.  During the course of the five-day hearing, testimony was taken from seven fact witnesses, both sides introduced documentary evidence in support of their respective positions, and both sides presented expert testimony as to what caused the RMK Funds' losses.

After the five-day hearing, the FINRA Panel unanimously found in favor of Morgan Keegan, entering an arbitration award completely denying the Sturdivants' claims and awarding them no damages ("the Award").  (*See* Moses Aff., Ex. 3.)

Pursuant to and consistent with both the parties' arbitration agreement and the Federal Arbitration Act ("FAA"), Morgan Keegan filed a petition in this Court to confirm the Award.   In response to Morgan Keegan's confirmation petition, Defendants, asserting spurious grounds for overturning the Panel's unanimous decision, opposed Morgan Keegan's confirmation petition and filed a counter-petition to vacate the Award.

The Defendants received a fair arbitration hearing before a diligent FINRA arbitration Panel that Defendants chose and accepted.  The Defendants lost.  The fact that the Defendants lost is not a reason to vacate the Award; accordingly, the Court should confirm the Award and, at the same time, deny the cross-petition to vacate.

---

[2] The Panel consisted of Chairman Marc Kalish, David Dresnick, and R. Thomas Barksdale.

### III.   JURISDICTION, STANDARD OF REVIEW AND PERMISSIBLE BASES FOR VACATUR

**A.**   **Jurisdiction**

When the Sturdivants opened investment accounts at Morgan Keegan, they agreed to arbitrate any disputes and further agreed that "the award of the arbitrators . . . shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction." (Moses Aff., Ex. 4.)  The parties also agreed that the choice of law would be "the State of Tennessee, and federal law as applicable, including the Federal Arbitration Act." (*Id.*)

The FAA provides that "if no court is specified in the agreement of the parties [as is the case here], then such application may be made to the United States in and for the district within which such award was made." 9 U.S.C. § 9.  The arbitration hearing occurred in Jackson, Mississippi, and the Award was made there.  Therefore, pursuant to the FAA, this Court is an appropriate one in which to seek confirmation of the Award.

**B.**   **Standard of Review**

Judicial review of an arbitration award is "exceedingly deferential." *American Laser Vision, P.A. v. Laser Vision Institute, LLC*, 487 F.3d 255, 258 (5th Cir. 2007) (quoting *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003)).  Under the FAA, arbitrators' decisions are given such deference that "[e]ven 'the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award.'" *Id.* (quoting *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 356 (5th Cir. 2004)); *see also Rain CII Carbon, LLC v. ConocoPhillips Co.*, --- F.3d -- --, 2012 WL 753263, at *2 (5th Cir. Mar. 9, 2012) ("'An award may not be set aside for a mere mistake of fact or law.'") (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007)); *United States ex rel. G&C Const., LLC v. Travelers Cas. & Sur. Co. of America*, No. 1:08cv1437-LG-RGW, 2011 WL 1376024, at *2 (S.D. Miss. Apr. 12, 2011)

(quoting same).  In fact, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence."  *Nationwide*, 429 F.3d at 643.

Thus, to avoid confirmation of the Award, Defendants bear the burden of convincing this Court under the narrowest standard of review in all of American jurisprudence to vacate the decision of the Panel.  As this very Court has aptly recognized, "[t]he party seeking to vacate the award bears the burden of proof, and the court must resolve any doubts or uncertainties in favor of upholding the award."  *Hamel-Schwulst v. Countryplace Mortg., Ltd.*, No. 1:08cv195-WJG-JMR, 2010 WL 606761, at *4 (S.D. Miss. Feb. 17, 2010) (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 n.9 (5th Cir. 2004)).

## C.     Permissible Bases for Vacatur

In the Fifth Circuit, "vacatur is available *only* for the limited reasons outlined in Section 10(a) of the FAA."  *Householder Group v. Caughran*, 354 Fed. Appx. 848, 850 (5th Cir. 2009) (emphasis added) (citing *American Laser Vision*, 487 F.3d at 258; 9 U.S.C. § 10).  Under Section 10 of the FAA, courts are permitted to vacate an arbitration award only in the following circumstances:

 (1)  where the award was procured by corruption, fraud, or undue means;

 (2)  where there was evident partiality or corruption in the arbitrators, or either of them;

 (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

 (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Citigroup Global Markets, Inc. v. Bacon,* 562 F.3d 349 (5th Cir. 2009) (quoting 9 U.S.C. §

10(a)); *see also Forsythe Intl., S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1020 (5th Cir.

1990) (finding "a district court has no authority to vacate an arbitration" unless one of the

statutory conditions is met) (citing 9 U.S.C. § 10(a)-(d)); *Marshall Durbin Poultry Co. v. United*

*Ford Workers Union, Local 1991*, 117 F.Supp.2d 566, 568 (S.D. Miss. 2000) ("Absent one of

these factors, this Court does not have authority to reconsider the merits of an arbitrator's award,

even though the award may rest on an erroneous interpretation of fact.") (citing *Six Flags Over*

*Texas, Inc. v. I.B.E.W., No. 116*, 143 F.3d 213, 214 (5th Cir. 1998)).[3]

Significantly, arbitration awards in the Fifth Circuit "can no longer be vacated on non-

statutory, common law grounds" such as "manifest disregard of the law." *Householder Group,*

354 Fed. Appx at 850 (citing *Citigroup Global Markets* 562 F.3d at 358.  As the Fifth Circuit

recognized in *Citigroup Global Markets*, 'manifest disregard for the law,' "as a term of legal art,

is no longer useful in actions to vacate arbitration awards. . . ." 562 F.3d at 358.  In fact,

"Section 10 provides the *exclusive* grounds for vacatur." *Householder Group*, 354 Fed. Appx. at

850 (emphasis added) (citing *Hall Street Assocs., LLC v. Mattel, Inc.*, 128 S.Ct. 1396, 1402

(2008).

## IV.   ARGUMENT

The only reasons set forth by Defendants against confirmation of the Award are those set

forth in the Sturdivants' Counter-Petition to Vacate.  Defendants' alleged bases for vacatur are

---

[3] The Fifth Circuit has acknowledged the holding of the United States Supreme Court "that a contract's choice-of-law provision did not evince the parties' clear intent to opt out of the FAA default rules*." Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)).  In *Action Indus., Inc.*, the Fifth Circuit affirmed the district court's application of the FAA's vacatur standard in light of the fact the parties did not evince a clear intent to opt of the FAA default rules, notwithstanding a reference to Tennessee law.  The arbitration agreement in this case, although referencing Tennessee law, specifically identifies the FAA and clearly does not evince any intent to opt out of the FAA rules for vacatur.  Accordingly, the FAA vacatur and confirmation standards apply.  Notwithstanding, the standards for confirmation and vacatur under the Tennessee Uniform Arbitration Act are substantially similar to the FAA.

short on detail and even shorter on proof.   First, Defendants claim that this Court should vacate the Panel's unanimous Award because Defendants hypothesize—without any evidence whatsoever and trumped-up only after the entry of the Award adverse to Defendants—that there was evident partiality on the part of the Panel, in particular with regard to Arbitrator David Dresnick ("Dresnick").  Defendants have put forth no evidence to date establishing evident partiality on the part of Dresnick.  Moreover, Defendants not only accepted the entire Panel (and accordingly Dresnick) at the beginning of the arbitration hearing, but as set forth below in more detail below, they praised the Panel at the end of the arbitration hearing.  The law is clear that the Sturdivants have waived any right to challenge the Award based on alleged evident partiality of the Panel.

Second, Defendants seek to vacate the unanimous Award based on the Panel's alleged manifest disregard of the law in granting Morgan Keegan's Motion in Limine to Exclude Regulatory Materials prior to the hearing.  Defendants also argue that the Panel's decision to exclude the regulatory materials amounts to an improper refusal to hear evidence.  These arguments are misplaced for numerous reasons.  First, as set forth above, the Fifth Circuit does not recognize "manifest disregard of the law" as a basis to vacate an arbitration decision.  Second, the Panelists correctly excluded evidence relating to regulatory materials based on numerous evidentiary rules.  Finally, arbitrators' evidentiary decisions rarely, if ever, serve as the bases for overturning an arbitration Award, particularly when Defendants received a fair hearing, as they did here.

**A.**      **Defendants Failed to Timely Object to the Panelists**

Defendants never objected to any of the arbitration Panelists.   Now, Defendants allege evident partiality and misconduct on the part of the Panelists.  Defendants' allegations are both not timely and without merit.

**1.**     *FINRA Rules Allow for Challenges to Panel Members*

FINRA Rules provide a procedure for parties to object to arbitration panelists and to seek their removal.  FINRA Rule 12406 states that "any party may ask an arbitrator to recuse himself or herself from the panel for good cause.  Requests for arbitrator recusal are decided by the arbitrator who is subject of the request."  (Moses Aff., Ex. 5.)  Here, Defendants never invoked this rule and never asked that a panelist recuse himself.  In addition, FINRA Rule 12407 provides that a party may request that the Director of Arbitration remove a panelist both before the hearing and even during the hearing.  (*Id*.)  Defendants never made such a request to the Director of Arbitration either before the hearing or during the arbitration hearing.

Defendants never challenged any of the Panelists or requested either their recusal or removal.  In fact, quite to the contrary, Defendants' counsel affirmatively accepted the Panel and praised the work of the Panel.  At the inception of the arbitration hearing, Defendants' counsel stated on the record, without being prompted, that he accepted the Panel.  He advised:  "**My name is Dale Ledbetter, Ledbetter & Associates.  And for the record, we accept the panel.**"  (Moses Aff., Ex. 2, Excerpts of Hearing Transcript, Volume 1, at p. 6:16-20.)

At the end of the hearing, Defendants' counsel heaped additional praise on the Panel.  Mr. Ledbetter stated at the end of his closing argument:   "**And with that, I -- I just cannot, again, praise highly enough the work of this panel, the decisions you've made, the way you have controlled both sides of the table.**"  (Moses Aff., Ex. 2, Excerpts of Hearing Transcript,

Volume 5 at p. 1367:3-6.)   Mr. Reasonover, co-counsel for the Defendants, joined in the accolades of the Panel stating:  **"I'd like to join Mr. Ledbetter in thanking the panel for their time and attentiveness as well."** (*Id*. at 1369:13-17.)  It is completely disingenuous for Defendants' counsel to accept the Panel at the start of the hearing, praise the Panel after the hearing, and then, after receiving an adverse result, file a spurious petition to vacate on grounds that the same Panel engaged in misconduct and was evidently partial.

### 2. *Defendants Waived the Right to Challenge the Panel*

By accepting the Panel and then conducting the hearing without any reservations, Defendants waived any rights to now challenge the Panel as a basis for vacatur.   There are myriad cases in the Fifth Circuit and elsewhere that confirm this is the law.

For example, in rejecting a party's objection to the selection of a particular arbitrator, the Fifth Circuit in *Brook v. Peak Int'l, Ltd* explained that the party "never objected to the AAA's failure to follow the selection process . . . (until prompted by the federal magistrate judge long after the arbitration had run its course)."  294 F.3d 668, 673 (5th Cir. 2002).  As a consequence, that "failure to file a clear written objection to a defect in the selection process constitutes waiver."  *Id.* at 674 (citing *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1263-64 (7th Cir. 1992)).  As the *Brook* Court explained, the Fifth Circuit "has previously held that objections to the composition of arbitration panels must be raised 'at the time of the hearing.'"  *Id.* (quoting *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987)); *see also Nordell Int'l Res., Ltd. v. Triton Indonesia, Inc.*, 999 F.2d 544, at *7 (9th Cir. 1993) (unpublished table decision) ("'[A]s a general rule, [a party] must object to an arbitrator's partiality at the arbitration hearing before such an objection will be considered by the federal courts.'") (quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358-59 (6th Cir.), *cert. denied*, 493 U.S. 809 (1989)).

Indeed, "'[i]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse.'"  *Brook*, 294 F.3d at 674 (quoting *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993)); *see also McVay v. Halliburton Energy Services, Inc.*, 688 F. Supp. 2d 556, 561 (N.D. Tex. 2010) ("A party cannot stand by during arbitration, withhold certain arguments, and upon losing, raise those arguments in federal court.") (citing *Gateway Techs. Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 998 (5th Cir. 1995)).  Accordingly, a party's "failure to object at the hearing constitutes waiver."  *Brook*, 294 F.3d 674 (citing *Bernstein*).[4]

Here, whatever concerns the Sturdivants now claim to have had about the Panel, and in particular, about Arbitrator Dresnick, were never lodged them prior to the issuance of the adverse result.   As a matter of law, Defendants' bases for vacatur regarding the Panel on grounds of evident partiality and/or misconduct are accordingly not allowed.

### 3.    *Understanding of the Products at Issue Not Evidence of Bias*

Even if Defendants had somehow preserved their challenge to the Panel (which they did not do), Defendants have offered no proof in support of their bias claim against Arbitrator Dresnick.  Defendants allege in their Cross-Petition to Vacate that there was misconduct on the

---

[4] *See also Dealer Computer Servs., Inc. v. Michael Motor Co., Inc.*, 761 F. Supp. 2d 459, 467 (S.D. Tex. 2010) ("A party seeking to vacate an arbitration award on the grounds of evident partiality generally must object during the arbitration or else waive such objection.") (citing *Bernstein*); *McVay*, 688 F.Supp.2d at 560-61 ("Even though the arbitrator disclosed the social relationship two months before she issued the final arbitration award, Plaintiff waited until after the arbitration award to claim partiality based on non-disclosure. Plaintiff waived any objection based on non-disclosure when he failed to object to the continued service of the arbitrator after she disclosed the relationship.") (citation omitted); *Nordell*, 999 F.2d 544, at *7 ("By failing to object to the partiality of the arbitrators to the arbitrators themselves, [the party] has waived any partiality complaint arising from the arbitrators' behavior at the hearing. . . ."); *Id.* at *7 ("A court 'will not entertain a claim of personal bias where it could have been raised at the arbitration proceedings but was not.'") (quoting *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 13 (1st Cir. 1989)); *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) (finding that a party "failed to object to the selection of the Board members at the time they were seated and has thereby waived this objection") (citation omitted)).

part of the Panel because Arbitrator Dresnick "failed to fully disclose his extensive relationship

and involvement with mortgage backed security products like the RMK family of funds."

(Defendants' Counter-Petition at ¶ 16(d).)

Defendants have submitted no proof supporting their bias claim.  They have offered

nothing, other than the bald allegation, as to whether and how Dresnick had an extensive

involvement with mortgage backed security products, or how this alleged involvement impacted

in any way his impartiality.  Even assuming the truth of the allegation, if an arbitrator had a basic

understanding of the securities at issue in this case and in which the RMK Funds invested—

asset-backed or mortgage-backed securities—that knowledge does not evidence bias or

misconduct on the part of the Panel or Arbitrator Dresnick or require any specific disclosure

from him.  In fact, FINRA arbitrators almost always have an interest in or a working knowledge

of the securities business, securities industry and products sold.  Presumably, that is why they

decide to become FINRA arbitrators and why FINRA approves them as arbitrators.

To establish evident partiality based on actual bias, the party urging vacatur must produce

specific facts from which "a reasonable person would have to conclude that the arbitrator was

partial to one party." *Householder Group*, 354 Fed.Appx. at 852 (citing *Weber v. Merrill Lynch

Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 550 (N.D. Tex. 2006)).  This is an "onerous

burden," because the urging party must demonstrate that the alleged partiality is "direct, definite,

and capable of demonstration rather than remote, uncertain or speculative." *Id.*  The burden

placed on the party seeking vacatur for evident partiality is "onerous" and "requires proof of

circumstances 'powerfully suggestive of bias.'"  *Nationwide*, 429 F.3d at 643 (citations omitted).

Defendants have not and cannot meet this high burden of demonstrating partiality.  There

is simply no allegation, much less any evidence proffered by Defendants, satisfying this onerous

standard.  As the Fifth Circuit rightly observed in *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007), "one of [arbitrations'] most attractive features apart from speed and finality" is the "expertise" of the arbitrators.   Certainly, having an understanding of the underlying securities in which the RMK Funds invested does not even begin to meet such an onerous threshold of establishing bias.

**B.**   **The Sturdivants Cannot Demonstrate Manifest Disregard of the Law on the Part of the Arbitration Panel in Its Decision to Exclude Evidence Nor Did the Panel Improperly Exclude Evidence.**

The Sturdivants erroneously argue that the Award should be vacated because the Panel manifestly disregarded the law in excluding evidence with regard to regulatory matters associated with the Funds.  This argument—regardless whether couched in terms of manifest disregard of the law or improper exclusion of evidence—fails for myriad, independent reasons. First, as set forth above, "manifestly disregarding the law" is simply no longer a basis to vacate an Award.  Second, the Panel properly considered the Motion from a procedural standpoint and as well correctly applied the law in excluding the regulatory settlements and complaints from being introduced as evidence in the arbitration.  Third, even if the Panel made an incorrect evidentiary decision—which it did not—such a decision is not a basis to vacate the Award. Panels are given wide discretion in their evidentiary decisions and courts do not second-guess arbitrators on these types of rulings.

> **1.**     ***The Panel properly considered all of the Parties' submissions with regard to its decision on the Motion in Limine***

Prior to the start of the final arbitration hearings, Morgan Keegan submitted a Motion in Limine to preclude Defendants from referring to, or introducing evidence of, certain regulatory matters at the final hearing in this case.  The issues related to that motion were fully briefed by the parties.  (*See* Moses Aff., Ex. 6.)

Before ruling on Morgan Keegan's Motion in Limine, the full panel conducted a lengthy telephonic hearing (which lasted more than an hour) and considered the written Motion, the Sturdivants' response, Morgan Keegan's reply, and the Sturdivants' sur-reply.  (*See* Moses Aff., Ex. 7 at p. 1.)  The Sturdivants erroneously contend that the Panel "refused to allow the Sturdivants to present case law on point clearly demonstrating that the Regulatory Materials were admissible in the Arbitration."  (Defendants' Counter-Petition at ¶16(b).)  This is simply false.  The Panel allowed both parties to submit multiple briefs, including allowing the Claimants to submit a sur-reply brief which is not allowed or contemplated by Code of Arbitration (*See* Rule 12503, which only allows the initial brief, the response, and the reply).[5]  Defendants' counsel also states that an arbitrator, David Dresnick, did not have any of the pleadings related to a Motion.  This unsupported statement is contrary to the Panel Order which affirmatively states that the Panel's decision was made *after a review of all of the pleadings*.  (*See* Moses Aff., Ex. 7.)  The Panel properly attended to the Motion.  That the Sturdivants are unhappy with the Panel's decision is not grounds for vacatur.

## 2.    *Panel correctly applied the law in excluding the regulatory settlements and complaints from being introduced as evidence in the arbitration.*

By way of background, in April 2010, the SEC, FINRA and four state securities commissioners filed regulatory charges relating to the RMK Funds against Morgan Asset Management ("MAM") (which served as the manager of the Funds),  Morgan Keegan, and several individuals associated with Morgan Keegan, MAM, or the Funds.  Each of these parties promptly filed answers denying all charges.  After enduring numerous delays with the SEC,

---

[5] Sturdivants' counsel apparently has confused this arbitration with a different arbitration.  In the *Holcomb v. Morgan Keegan* arbitration, which was handled by the same counsel as this matter, a panelist refused to entertain a second brief from the claimant on an issue.  That never happened here.  Regardless, the FINRA Rules only contemplate the motion, a response, and a reply, so even if the Panel had rejected the sur-reply brief, the Panel would have certainly been entitled to do so.

Morgan Keegan, MAM and two of the individuals, James Kelsoe (the Funds' Portfolio Manager) and Joseph Weller (the head of Fund Accounting) (collectively "Respondents") settled the protracted proceeding and also settled the proceedings brought by the four States and FINRA in June, 2011 (the "Settlements").  Significantly, Respondents entered into the Settlements without admitting or denying any material "findings" the regulators made in the Settlements.   Moreover, these purported "findings" differed significantly from what the Regulators initially alleged and from what they sought in terms of monetary relief.

   Courts have repeatedly concluded that the fact that there has been a regulatory investigation and/or subsequent charge is not proof of any wrongdoing and that such matters are therefore inadmissible as evidence.   In addition, regulatory settlements are not proof of anything since – just like the underlying charges – they have neither been proven in a judicial proceeding, nor admitted by Morgan Keegan.  Such settlements are not "true adjudications of the underlying issues" and were therefore not evidence and were properly excluded by the Panel.

   **i.**      **The Regulatory Charges Are Merely Allegations Of Wrongdoing That Have Never Been Adjudicated, Are Not "Proof" Of Any Wrongdoing, And Therefore Are Not Admissible As Evidence.**

   The allegations in the regulatory charges are just that – allegations.  Their merit, or frankly, their lack of merit, has never been judicially determined.  Defendants were essentially making a circular argument by attempting to use <u>unproven</u> regulatory allegations as <u>proof</u> of their similar allegations here.  Rejection of this effort turns on a very familiar principle – that an accused is presumed innocent until <u>proven</u> guilty.  By seeking to admit what are mere allegations, Defendants attempted to upend this principle of fundamental fairness.

   Courts have repeatedly concluded that the fact that there has been a regulatory investigation and/or subsequent charge is not proof of any wrongdoing and that such matters are

therefore inadmissible.  *See, e.g., In re Merrill Lynch & Co., Inc. Research Report Secs. Litig.,* 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("references to preliminary steps in litigation and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial");  *see also Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) ("neither a complaint nor references to a complaint which results in a consent judgment may be properly cited in the pleadings"); *In re Tenant Healthcare Corp. Secs. Litig.,* 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007) (SEC complaint excluded as inadmissible hearsay); *In re Blech Secs. Litig.,* 2003 WL 1610775, at *11 (S.D.N.Y. Mar.26, 2003) (an SEC complaint "is not evidence of anything other than the existence of an accusation").

Regulatory charges are thus routinely excluded because, in the words of the court in *Blech*, as mere charges they are "not evidence of anything other than the existence of an accusation."  *Id*. at *11.[6]  Under this analysis, the Panel correctly excluded the regulatory materials.

---

[6] Any other approach would have to rest on the premise that regulators are always right – a notion that even a cursory reading of the financial press would not support.  Not only have large frauds gone undetected (*e.g.,* Stanford, Madoff, etc.), but cases the regulators have actually brought are frequently found to have had no merit.  A recent example involving Morgan Keegan occurred just recently when a federal judge granted summary judgment against the SEC in its Auction Rate Securities case against Morgan Keegan.  The market for Auction Rate Securities unexpectedly froze in early 2008, and the SEC, among other things, claimed that Morgan Keegan committed "fraud" by not adequately warning of this risk.  In concluding its opinion dismissing the SEC case in its entirety, the U.S. District Court stated as follows:

> The Court agrees that the failure to predict the market does not amount to securities fraud.  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[C]orporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.  Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim for securities fraud.")  The Court therefore grants Morgan Keegan's motion for summary judgment that its failure to predict the market does not constitute securities fraud.

*SEC v. Morgan Keegan & Co., Inc.*, 806 F.Supp.2d 1253, 1267 (N.D. Ga. 2011).

    **ii.**    **Morgan Keegan Did Not Admit Any Of The Material Findings In The Regulatory Settlements And Therefore The Settlements Themselves Are Also Not Admissible.**

To the extent a defendant <u>admits</u> to the findings in a regulatory settlement, such findings can, under certain circumstances, be admissible in other litigation.  Absent such an admission, however, such findings are clearly not admissible.  This is true for at least four reasons:

    **a.**    **The Regulatory Settlements Remain Mere Allegations.**

First, the Regulatory Settlements are not proof of anything since – just like the underlying charges – they have neither been proven in a judicial proceeding, nor admitted by Morgan Keegan.  Such settlements are not "true adjudications of the underlying issues" and are therefore not evidence and are properly excluded.  *See Lipsky*, 551 F.2d at 893-94 (excluding a SEC consent decree because it was the result of private bargaining, [where] there was no hearing or rulings or any form of decision on the merits"); *see also, In re Merrill Lynch*,  218 F.R.D. at 76, 78-79 (citing to a long line of cases holding that settlement agreements, consent decrees, complaints, and preliminary investigative reports from regulatory investigations are immaterial and inadmissible).

    **b.**    **The Regulatory Settlements Here Are Clearly Not An Indication Of Guilt.**

Second, this Panel did not and should not have indulged the assumption that the findings in a regulatory settlement – despite the lack of any admission by Morgan Keegan – somehow indicate guilt. Courts recognize that litigants often settle lawsuits for reasons that have nothing to do with the merits of the allegations, for example to avoid future costs, inconvenience, and distractions to the ongoing business enterprise.  A party may settle due to "desire for peace rather than from any concession of weakness of position." *Hudspeth v. Comm'r of IRS*, 914 F.2d 1207,

1213 (9th Cir. 1990) (citations and internal quotation marks omitted). A litigant's willingness to settle should thus not be construed as an admission of liability or proof of wrongdoing.

The leap of logic the Defendants would have had the Panel make – that the regulatory Settlements are, at bottom, an indication of guilt – is thus totally inapplicable, and the Panel appropriately excluded these matters.

### c. Courts Do Not Permit The Use Of Settlement Agreements As Proof Of Liability.

Third, permitting the admission of settlement agreements to prove liability would undermine the strong public policy in favor of settlement agreements. As the court noted in *Hasbrouck v. BankAmerica Housing Servs.*, 187 F.R.D. 453, 458-62 (N.D.N.Y. 1999), the law encourages settlements since they allow the parties to avoid the high cost of litigation, conserve judicial resources, and mitigate the risks of litigation to both sides. Simply put, parties would be much less likely to negotiate settlements if their agreements could later be used as a weapon in other proceedings. Courts have therefore uniformly excluded any evidence of settlements in subsequent proceedings for the purpose of proving liability. *See, e.g.*, *Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co.*, 792 F.2d 1036, 1042 (11th Cir. 1986) (excluding settlement from evidence was proper); *Bachenski v. Malnati*, 11 F.3d 1371, 1375 n.5 (7th Cir. 1993) ("Evidence of settlement is of course inadmissible to prove liability"). This principle has even been incorporated into Rule 408 of the Federal Rules of Evidence which states that settlements are "not admissible… to prove liability for … a claim". *See also Dent v. U.S. Tennis Assoc., Inc.,* No. CV-08-1533 (RJD)(VVP), 2008 WL 2483288 at *2 (E.D.N.Y. June 17, 2008) (holding that plaintiff cannot use "the settlement agreement as proof of the truth of the matters that led to the settlement agreement"); *ABF Capital Mgmt. v. Askin Capital Mgmt.*, No. 96 Civ. 2978 (RWS), 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) ("even if the Settlement

Agreement contained admissions, which it does not, Rule 408 of the Federal Rules of Evidence would prevent the introduction at trial of settlement-related materials to prove or disprove liability").

### d. What Little Probative Value The Regulatory Settlements May Have Is Outweighed By Their Clear Prejudice.

Finally, the regulatory Settlements should have been excluded because they are unduly prejudicial. The law recognizes that even when certain evidence has probative value, it should nevertheless be excluded if that value is outweighed by other factors such as its unduly prejudicial effect. *See, e.g.*, Federal Rule of Evidence 403. Having neither been admitted nor proven, the Settlements here had no probative value and, as noted above, should have been excluded for this reason alone. Even if some probative value is assumed for the sake of argument, that minimal value was clearly outweighed by the unfair prejudice the settlements would create. Courts have cautioned against introducing references to regulatory proceedings into private litigation because doing otherwise can unfairly prejudice a respondent by lending undue credence to the claimant's claims. *See, e.g., Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 U.S. Dist. LEXIS 112503, at *18-22 (N.D. Ga. Apr. 23, 2008) (finding that SEC Order issued pursuant to an offer of settlement was not admissible under Fed. R. Evid. 403, 407 and 408 because: (1) the Order, which detailed the alleged violations, was "highly prejudicial"; (2) the Order's "findings of fact [did] not have significant probative value"; and (3) "legal conclusions in public reports are inadmissible.") *See also United States v. Quattrone,* 441 F.3d 153, 186-87 (2d Cir. 2006) (holding that factual inquiries into an SEC investigation of the defendant were unfairly prejudicial because the inquiries served no purpose other than to inappropriately suggest that the defendant ran afoul of the SEC). Moreover, even beyond the obvious prejudicial effect, admission of the Settlements here would have created additional

problems of delay and confusion since the meaning and significance of the settlement findings are likely to be hotly disputed.  Instead of trying just one case, the Panel would have been drawn into multiple additional and unnecessary disputes.

For all of these reasons, the Panel properly concluded that the regulatory complaints and settlements should not be introduced into evidence at the arbitration hearing.

### 3.        *Arbitrators Have Broad Discretion to Make Evidentiary Decisions*

In the Fifth Circuit, "'arbitrators have broad discretion to make evidentiary decisions.'" *Parker v. JC Penney Corp.*, 426 Fed. Appx. 285, 289 (5th Cir. 2011) (quoting *Int'l Chem. Workers Union, Local 683C v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003)).  In fact, Fifth Circuit courts "typically do[] not review the adequacy of an arbitrator's evidentiary rulings."  *Id.* (citing *Amalgamated Meat Cutters & Butcher Workmen v. Neuhoff Bros.*, 481 F.2d 817, 820 (5th Cir. 1973) (explaining that "the arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings")).  To justify vacatur for an evidentiary decision, a party must explain why a court "should overlook [Fifth Circuit] precedent and disturb the arbitrator's determination."  *See id.*  According to the Fifth Circuit in *Forsythe*, an arbitrator "'is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties an adequate opportunity to present its evidence and argument.'"  915 F.2d at 1023 (quoting *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985)); *see also Hamel-Schwulst*, 2010 WL 606761, at *5 (adopting same language as *Forsythe* and finding "no reason to overturn the arbitration award based on a contention that the arbitrator did not consider all the evidence in this case").  "If the arbitrators' decision rests on an adequate basis, the complaints that the panel failed to address all issues presented will not render the proceedings 'fundamentally unfair' or justify disturbing the award."  *Id.* (multiple citations

omitted); *see also Householder Group*, 354 Fed. Appx at 851 (stating "even assuming, *arguendo*, that the panel erred in prohibiting [the party from admitting certain evidence], he has not demonstrated that, such alleged errors rose to the level of depriving him of a fair hearing").

In the instant case, it is apparent that the Sturdivants cannot show that the Panel's refusal to accept prior regulatory matters as evidence should be considered misconduct.  The Panel had the benefit of the parties' extensive briefs and oral argument and excluded the regulatory materials in part because they "would be cumulative and, to a large extent, repetitive."  (Moses Aff., Ex. 7.)  As Fifth Circuit Courts have made clear, however, the panel was not bound to hear all evidence tendered by the parties, and the Panel acted within its power in rejecting cumulative evidence.  *See Butler v. Munsch, Hardt, Kopf & Harr, P.C.*, 145 Fed. Appx. 475, 477 (5th Cir. 2005) (finding the panel's exclusion of cumulative evidence could not serve as a basis for vacating the arbitration award); *see also French v. Allstate Indemnity Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (concluding "that the district court was well within its discretion" in excluding evidence that "would be unhelpful and needlessly cumulative").

The Panel's decision in the present case is further justified by its finding that the regulatory materials "deal with many matters that are not relevant to the investments at issue in the case."  (Moses Aff., Ex. 7, p.1.); *see Forsythe*, 915 F.2d at 1023 (finding "no particular statutory basis for attacking the propriety of the panel's action in deeming [a specific issue] irrelevant to its determination of the merits"); *Wanken v. Wanken*, 451 Fed. Appx. 319, 322 (5th Cir. 2011) (where the panel refused to order production of documents, "on the grounds that the requests were cumbersome and that some of the requests were irrelevant or not critical to the claims at issue," the Fifth Circuit finding that "[t]he panel's decision on that score was eminently

reasonable and does not amount to 'misbehavior' or refusal to 'hear evidence pertinent and material to the controversy'").

Lastly, the panel agreed with Morgan Keegan "that the introduction of those materials would be unduly prejudice and that the prejudice would greatly outweigh any probative value." (Moses Aff., Ex. 7 at pp. 1-2).  Taken together, the panel's reasons for granting Morgan Keegan's motion on the merits provide more than enough justification for its decision, and "because 'the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively *to simplify and expedite* the proceedings before him.'"  *Forsythe*, 915 F.2d at 1022 (emphasis added) (quoting *Fairchild & Co., Inc. v. Richmond, F&P R.R.*, 516 F.Supp. 1305, 1313 (D.D.C. 1981)).

Moreover, the Defendants were simply not allowed to present evidence of the regulatory charges and Morgan Keegan's settlements with regulatory authorities.  The Defendants were able to, and in fact did, present as evidence the same documents utilized by regulators in the regulators' investigation.  The Defendants were simply not allowed to introduce the regulatory complaints (which were never proven) or the settlements (in which Morgan Keegan never admitted any material fact).   Defendants were in no way prejudiced by the Panel's evidentiary decision and received a fair hearing.

To the extent that the Court disagrees with the Panel's evidentiary decision, the Fifth Circuit in *Forsythe* explained that "whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so."  *Id.*; *see also Adcock v. Halliburton Energy Servs., Inc.*, No. 2:04cv-284(Br)(Su), 2007 WL 496729, at *2 (S.D. Miss. Feb. 13, 2007) (quoting same language from *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 394 (5th Cir. 2003)

before rejecting vacatur of an arbitration award).  As the Fifth Circuit emphasized in *Forsythe*, "[s]ubmission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial."  915 F.2d at 1022. The present circumstances are similar to those considered by this Court in *Hamel-Schwulst*, where it was found that "[t]he record indicates that adequate opportunity was afforded to both parties to present their positions and the minimum standards of fundamental fairness were met." 2010 WL606761, at *5.

In short, granting the Sturdivants' motion for vacatur creates the risk the U.S. Supreme Court in *Hall Street Assocs., LLC v. Mattel, Inc.* sought to avoid by "open[ing] the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring[ing] arbitration theory to grief in post-arbitration process."  128 S.Ct. at 1406 (internal quoted citation omitted).

Because the Sturdivants have failed to make any showing that the panel's evidentiary decision approached a level that could reasonably be considered 'misconduct,' particularly under the narrow and rigorous standard applied in the Fifth Circuit, vacatur should be denied.

**C.    The Sturdivants Have Failed to Assert Any Other Reasonable Basis For Vacatur.**

Because no additional statutory grounds for vacatur are asserted and given the Fifth Circuit's rejection of the 'manifest disregard of the law' test, the Sturdivants have not provided the Court with any reasonable basis to vacate the panel's Award.  As a result, the Fifth Circuit's very recent decision in *Rain CII Carbon LLC v. ConocoPhillips Co.* applies: "[g]iven the deference employed when evaluating arbitral awards, and as all doubts implicated by an award must be resolved in favor of arbitration, the award in this case is sufficient to withstand [the]

request for vacatur."  2012 WL 753263 at *5.  Accordingly, the Court should follow the well-reasoned decision in *American Laser Vison*:

> We will not second-guess multiple, implicit findings and conclusions underpinning the award. We do not decide if the award was free from error. We decide only that it is not the kind of extraordinary award that ineluctably leads to the conclusion that the arbitrator was "dispensing his own brand of industrial justice."

487 F.3d at 260.  This arbitration was in no way, shape, or form an extraordinary Award where the Panel was dispensing its own brand of industrial justice.  To the contrary, this was a case tried before an attentive Panel, who, after being engaged for five days and listening and studying all of the evidence, decided in favor of Morgan Keegan.  There is simply no basis to vacate this Award, and therefore, the Award should be confirmed.

## V.   CONCLUSION

There simply is no basis to vacate the decision of the Panel.  Morgan Keegan respectfully requests that the Court confirm the Award and deny the Petition to Vacate.

Respectfully submitted,

/s/ John T. Moses
John T. Moses (MS Bar No. 101126)
BASS, BERRY & SIMS, PLC
100 Peabody Place, Suite 900
Memphis, Tennessee  38103
Telephone:  (901) 543-5900
Facsimile:  (901) 543-5999
jmoses@bassberry.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2012 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ John T. Moses

10721353.1

23