IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON DIVISION

**MORGAN KEEGAN & COMPANY, INC.**

    **Petitioner/Counter-Respondent,**

**v.**                                              **Case No. 3:11-cv-638-DPJ-FKB**

**YGONDINE W. STURDIVANT and
MIKE P. STURDIVANT,**

    **Respondents/Counter-Petitioner.**

---

**BRIEF IN OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARD AND IN SUPPORT OF COUNTER-PETITION TO VACATE ARBITRATION AWARD**

---

Respondents and Counter-Petitioners Ygondine W. Sturdivant and Mike P. Sturdivant (the "Sturdivants") or ("Petitioners"), pursuant to 9 U.S.C. § 10(a) and Tenn. Code Ann. § 29-5-313(a), file this brief in support of their Counter-Petition and Application for an Order Vacating the Arbitration Award rendered in the FINRA arbitration <u>Ygondine W. Sturdivant and Mike P. Sturdivant v. Morgan Keegan & Company, Inc.</u>, FINRA Case No. 08-03548 (the "Arbitration") and remanding the case to FINRA for rehearing. In support of their application, the Sturdivants state to the Court as follows:

        **I.   STATEMENT OF FACTS**

The Sturdivants initiated an arbitration claim against Morgan Keegan & Company, Inc. ("Morgan Keegan") before the Financial Industry Regulatory Authority ("FINRA") regarding losses that they incurred on investments in the RMK family of bond funds sold to them by Morgan Keegan, including the RMK Multi-Sector High Income Fund, the RMK Advantage Income Fund, Inc., the RMK Select High Income Fund Class-A, and the RMK Strategic Income Fund (collectively the "RMK Funds"). The RMK Funds were largely invested in what have

become commonly known as mortgage-backed securities, asset-backed securities and structured finance products, many of which had substantial holdings in subprime collateral. The Funds' holdings were heavily concentrated in lower or subordinated tranches of these securities. The Sturdivants asserted claims for, <u>inter alia</u>, misrepresentations and omissions, breach of fiduciary duty, unsuitable investments, negligence, failure to supervise, and violations of FINRA Rules. (D.E. 19-1.)[1]

After potential arbitrators made required disclosures and Morgan Keegan's Motions for Recusal were considered, a three member arbitration panel consisting of Mark Kalish, David Dresnick, and R. Thomas Barksdale (the "Panel") was eventually selected. Mr. Kalish was the presiding Chairman, Mr. Dresnick was the public arbitrator; and Mr. Barksdale was the non-public arbitrator. Arbitrator Dresnick, however, failed to disclose, as required by FINRA Rules, his extensive background with mortgage backed securities. Because of Arbitrator Dresnick's failure to properly disclose this vital background information, the Sturdivants did not object to his participation on the Panel. Dresnick disclosed where he worked but did not disclose the nature and extent of his work or the products he dealt with.

The parties subsequently arbitrated the Sturdivants' claims during the week of September 26, 2011, in Jackson, Mississippi. On October 7, 2011, the Panel entered an award dismissing the Sturdivants' claims with prejudice (the "Award") (D.E. 1–2.). The Award states, in part, as follows:

---

[1] Morgan Keegan characterizes the Sturdivants as "uber-wealthy," suggesting that because they are financially stable they should not and could not be taken advantage of by Morgan Keegan's misrepresentations about the RMK Funds and the subsequent mismanagement of the funds. This is not the case. Morgan Keegan targeted the RMK Funds for sale to high income individuals–the "uber-wealthy"–in order to maximize its profits from the RMK Funds, regardless of the Funds suitability for the investor. Exhibit "A" comes directly from the FINRA website. This posting makes clear that the typical victim of investment fraud is not an underprivileged individual. The Sturdivants meet several of the characteristics set forth on the FINRA website.

> [T]he direct and circumstantial evidence of how Claimants M. Sturdivant and Y. Sturdivant made their investment decisions, as well as the fact that most of the wrongdoing asserted by Claimants M. Sturdivant and Y. Sturdivant was attributable to non-parties, convinced the Panel that any wrongful conduct on the part of Respondent was neither a direct nor proximate cause of Claimants M. Sturdivant and Y. Sturdivants' losses.[A]

The Panel does not describe the non-parties to whom they are referring in the Award. If the non-parties are Regions Financial or Morgan Keegan Asset Management, neither of these companies is a registered FINRA member and, therefore, could not be brought before FINRA as a party. Neither of those parties had direct contact with the Sturdivants. Morgan Keegan was the sole source of contact and information regarding the RMK Funds. The Panel's statement regarding the third parties is a blatant example of evident partiality on the part of the Panel.

It is against this backdrop that Petitioner seeks to vacate the award in this case that denied Petitioners the fundamental fairness to which they were entitled. There is both a legal and a factual basis for this Court's review of the Award issued by the Arbitration Panel.

## II.     STANDARD OF REVIEW

The Sturdivants seek vacatur of the Award based on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2) and (3), and the Tennessee Uniform Arbitration Act ("TUAA"), Tenn. Code Ann. § 29-5-313(a)(2) and (4)[2].

The purpose of the FAA and the TUAA is to promote private settlement of disputes between parties and avoid protracted and expensive litigation. Therefore, the scope of judicial review of arbitration awards is narrow. A federal district court may set aside an arbitration award, however, under on a finding that certain statutory or judicial grounds are present. The Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 328 (6th Cir. 1998). The FAA and the

---

[2]     The account agreements, which Morgan Keegan required the Sturdivants to sign, call for Tennessee law to apply.

TUAA both provide for vacatur of an arbitration award by a district court where (1) the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced, and (2) where there was evident partiality on the part of the arbitrators. A district court may also vacate an award where the arbitrators act with manifest disregard of the law.

The TUAA states, in relevant part, that "upon application of a party, the court shall vacate an award where here was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; [or] the arbitrators . . . refused to hear evidence material to the controversy or otherwise so conducted the hearing. . . as to prejudice substantially the rights of a party." Tenn. Code. Ann. § 29-5-313(a)(2) and (4). Similarly, Section 10 of the FAA provides for vacatur of an award in the following relevant circumstances:

\*\*

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

\*\*\*

9 U.S.C. § 10(a).

The provisions of the FAA apply in this case because this matter involves an arbitration proceeding in which the underlying securities transactions implicates interstate commerce. See Dean Whitter Reynolds, Inc. v. McCoy, 853 F. Supp 1023, 1033 (E.D. TN 1994); Warbington Construction v. Franklin Landmark, LLC, 66 S.W.3d 853 (Tenn. Ct. App. 2001).

4

FINRA stresses the importance of fairness and impartiality in the arbitration process. For example, the FINRA Dispute Resolution Arbitrator's Reference Guide is filled with references to fairness and impartiality, including the following:

- "FINRA Dispute Resolution pledges to provide impartial professional staff and highly trained arbitrators and mediators committed to delivering fair, expeditious, and cost-effective dispute resolution services for investors, brokerage firms, and their employees." (p. 5)

- An arbitrator should "[d]ecline to serve on cases unless you can be fair to the parties and available to conduct the arbitration promptly, " and "[t]his includes your ability to be impartial and neutral to all parties throughout the proceeding. You must be impartial in both appearance and in fact." (p. 15).

- An arbitrator should "[c]onduct fair and impartial pre-hearing conferences and evidentiary hearings." (p. 17).

Further, the Arbitrator Reference Guide also states (p. 5):

- The following, though not exhaustive, are examples of circumstances where a challenge for cause would be granted.

    Opinion and Bias

    1. Arbitrator has a firm opinion or belief as to the subject of an action for which she/he is an arbitrator.

Arbitrators Dresnick and Kalish did not meet these fundamental requirements as arbitrators. Arbitrators Dresnick and Kalish had obvious rigid opinions about the RMK Funds which he repeatedly verbalized during the hearing, clearly influencing each other and the other Panel member. Arbitrator Kalish's commentary was not founded on testimony, but his own

5

convictions based on outside knowledge, and his remarks were clearly influential. Every time he offered this type of comment or question, he was influencing the other arbitrators.

Upon these grounds, the award should be vacated and remanded for a new hearing. Petitioners should be provided with their fundamental right to have this case heard by an impartial, unbiased panel of arbitrators who remain committed to the process in its entirety. Although the parties contractually agreed to a non-judicial FINRA arbitration, they are still entitled to a fair and impartial process, which did not occur in this case. The Award should be vacated because (1) the Panel granted Morgan Keegan's Motion in Limine to Exclude Regulatory Materials despite the fact that Arbitrator Dresnick did not have any of the relevant pleadings and Arbitrator Dresnick stated at the pre-hearing conference that he was ready to rule on the Motion without reviewing or even having in his possession the relevant pleadings; (2) the law identified by the Petitioners in opposition to the Motion clearly indicated that the Regulatory Materials were admissible; and (3) Arbitrator Dresnick failed to disclose his previous involvement with mortgage backed securities like those at issue in Sturdivants' case. These facts represent the kind of misconduct and evident partiality that warrants vacatur of the Award. The Sturdivants were denied the fundamentally fair hearing to which they were entitled and, therefore, request a new hearing before an unbiased panel.

### III.   ARGUMENT

**A.   Summary of the Basis for the Sturdivants' Petition to Vacate the Award and for a New Hearing Before an Unbiased Panel.**

The Award should be remanded for a new hearing for the following reasons:

#### 1.   The Panel Did Not Read the Required Submissions

The Code of Ethics for Arbitrators in Commercial Disputes was developed by the American Bar Association and the American Arbitration Association to guide arbitrators in their

dealings with parties engaged in disputes. The Code of Ethics specifically directs arbitrators to properly prepare for evidentiary hearings. The Code of Conduct (relevant portions of which are attached as Exhibit "B"), in the section titled "Duties, Obligations, and Ethical Considerations for FINRA Arbitrators" states:

> "**Proper preparation requires that you review all filed claims, answers, specific motions and responsive papers prior to all conferences and hearings**."

On September 6, 2011, Morgan Keegan filed a "Motion in Limine to Exclude Regulatory Matters filed by Respondent (the "Motion"). (D.E. 19-6, pp. 1–11.) Morgan Keegan asked the Panel to prohibit the Sturdivants from presenting pertinent material and admissible evidence related to Morgan Keegan's settlement of charges related to the RMK Funds with the Securities and Exchange Commission ("SEC"), FINRA, and multiple state law enforcement agencies (the "Multi-State Task Force") (collectively the "Regulatory Materials") to the Panel at the final hearing. The Multi-State Task Force, the SEC, and FINRA, all made Findings of Fact and Conclusions of Law as part of their consent orders with Morgan Keegan entered on June 21, 2011. These findings of fact were based on extensive investigation by FINRA and government agencies into Morgan Keegan's role in the RMK Funds. The Sturdivants opposed Morgan Keegan's Motion and urged the Panel to admit and consider the evidence along with all of the other evidence that would be admitted at the hearing, as well as Morgan Keegan's rebuttal evidence, if any. (D.E. 19-6, pp. 12–37.) Morgan Keegan filed a reply and the Sturdivants filed a sur-reply (D.E. 19-6, pp. 28–61.).

The Panel addressed the Motion during the pre-hearing conference on September 21, 2011. At the beginning of the hearing, Arbitrator Dresnick indicated that he did not have any of the four briefs related to the Motion, but understood the issues and was ready to make a ruling.

It was clear from his comments, reactions and demeanor that he had not read the materials. Arbitrator Dresnick could not possibly have "understood the issues" without reading the submissions unless he was relying on outside information and/or preconceived notions.

During oral argument, counsel for the Sturdivants informed the Panel that there was clear and on-point authority showing that the Regulatory Material was admissible. The Panel did not allow counsel to argue these points of law. The Panel granted the Motion and entered a written order excluding the evidence on September 21, 2011 (the "Order"). (D.E. 7–5.) The Panel's Order states, in relevant part, as follows:

> On the merits of the motion, the panel will exclude evidence and argument concerning the regulatory matters identified in the motion. Claimants are not offering those materials to establish their preclusive effect, and Claimants intend to still offer their own evidence of wrongdoing. Therefore, the regulatory materials would be cumulative and, to a large extent, repetitive. Furthermore, the regulatory materials deal with many matters that are not relevant to the investments at issue in the case. Finally, the panel agrees with Respondent that the introduction of those materials would be unduly prejudicial and that the prejudice would greatly outweigh any probative value.

This language, in and of itself, clearly demonstrates evident partiality.

FINRA hearings are equitable proceedings. The FINRA Arbitrator's Manual quotes Domke on Aristotle at the very beginning of the Manual: "Equity is justice in that it goes beyond the written law. And it is equitable to prefer arbitration to the law court, for the arbitrator keeps equity in view, whereas the judge looks only to the law, and the reason why arbitrators were appointed was that equity might prevail." The FINRA Arbitrator's Manual also states: "In arbitration, even more than in court, not only must justice be done, but justice must also be seen to be done[3]." Petitioners did not receive justice and justice was not done due to the clear bias of industry Panelist, Dresnick.

---

[3]   Portions of FINRA's Arbitrator's Manual are attached as Exhibit "C."

2.     **Bias of Arbitrator Dresnick**

There was clear bias on the part of arbitrator Dresnick. This finding of bias does not have to rely on speculation or conjecture on the part of this Court. The bias is made clear based in Dresnick's own statements made during the course of the hearing. Arbitrator Dresnick revealed during the course of the hearing week, off the record, that his professional experience includes substantial involvement with mortgage backed securities. Arbitrator Dresnick also made numerous comments about the case being about "the market." The Arbitration and Mediation Group, of which Arbitrator Dresnick is currently President, states the following about Arbitrator Dresnick:

> **Mr. Dresnick has had over 40 years of experience as the President of a development company, three mortgage banking firms, a New York Stock Exchange subsidiary that placed $1 billion per year in real estate debt, Executive Vice President of a privately owned real estate syndication company, President of an FDIC-insured institution and the Senior Executive and Chief Lending Credit Officer for several large insured depository companies.**

Petitioners were unaware of the extent of Dresnick's relationship with products similar to the RMK Funds at issue in the Arbitration until the evidentiary hearing was underway. Had Petitioners known the extent of Dresnick's business experience in dealing with the products at issue in this case, Petitioners would have either excluded him from the potential arbitrator pool at the outset of the arbitration process, or would have requested that Dresnick recuse himself due to the conflict of interest that became apparent during the evidentiary hearing.

Petitioners relied on the legitimacy of the Arbitrator's oath signed by Dresnick and on the thoroughness of the disclosures he made. Had Petitioners known that the Panel was not neutral

9

and had Petitioners had information supporting a request that Dresnick recuse himself or that the Director remove him, those actions would have been taken by Petitioners.

Arbitrator Dresnick's failure to make full disclosure of his background and experience constituted fraud, misrepresentation and misconduct.

The details of Dresnick's duties as President of a development company, three mortgage banking firms, a New York Stock Exchange subsidiary that placed $1 billion per year in real estate debt, and as an Executive Vice President of a privately owned real estate syndication company, President of an FDIC-insured institution and the Senior Executive and Chief Lending /Credit Officer for several large insured depository companies, present a clear conflict of interest for Dresnick to be party to a ruling that would raise the standard of disclosure requirements and warnings to investors in prospectuses of the type given to investors in the Morgan Keegan proprietary RMK Funds. Disclosing where he worked without disclosing what he did constitutes a glaring omission.

### 3. Arbitrator Dresnick's and Chairman Kalish's Misconduct Went Far Beyond The Informality of Arbitration and Denied Petitioners A Fundamentally Fair Hearing.

Petitioners did not choose FINRA arbitration when they chose to file a claim against Morgan Keegan. Respondent Morgan Keegan required Petitioners, through its own account opening documents which Morgan Keegan <u>required</u> Petitioners to sign, to bring any dispute that may arise before a FINRA Arbitration Panel. Although forced into arbitration by Respondent, Petitioners do recognize that arbitration, by its nature, is less formal than judicial proceedings. However, Respondent's decision to trade the formality of a courtroom for the informality of arbitration should, at the very least, not come at the cost of a fundamentally fair hearing, as has happened here to Petitioners.

FINRA's Code of Arbitration Procedure 12410(a)(1) provides that "close questions regarding challenges to an arbitrator by a customer under this rule will be resolved in favor of the customer." Given the facts in this case, it is not even a close question. The bias of Arbitrators Kalish and Dresnick deprived Petitioner of a fair hearing.

It was not until the evidentiary hearing was underway that Petitioner was convinced of Dresnick's obvious bias. One at least two occasions, Petitioners' counsel heard Dresnick speak to the other Panelists about the case being nothing more than a result of "the market."

Arbitrator Kalish's bias was also revealed bit by bit during the evidentiary hearing through the opinions and conclusions he verbalized during the hearing and comments he made that were in direct conflict with the testimony of Petitioners' expert witness, Dr. Craig McCann. Arbitrator Kalish stated his own conclusions, not based on Claimants' expert Dr. McCann's testimony, but on outside knowledge. Examples of Kalish's bias are stated below as excerpts from Volume 1 of 5 of the Hearing Transcript.

Volume 1 of 5, Page 162, Line 5

CHAIRMAN KALISH: (to Dr. McCann) Isn't the point of your -- your testimony then, these were not wise investments as opposed to -- but what we have to figure out is what was disclosed, what was disclosed adequate to inform the Sturdivants as they existed at that time?--

A. Right.

CHAIRMAN KALISH: -- regarding the investments they were making? Not whether --

because if these were -- if we knew back in 2005 that these were as bad as you're saying they were, one would hope that somebody would step in and say,

11

"You can't sell these anymore." But nobody did that.

These are all looking at it saying, "Now that we know what we know, nobody

should have invested in these things."

    A. (by Dr. McCann) Not at all. I don't think I mean to be disagreeable at all.

Clearly, Arbitrator Kalish was stating his own conclusion when he stated his inference that Dr. McCann's testimony was saying, "Now that we know what we know, nobody should have invested in these things." He was verbally disagreeing with Claimants' expert.

In Case No. CH-10-1547, the Chancery Court for the State of Tennessee Thirtieth Judicial District vacated an award by a FINRA arbitration panel in another case against Morgan Keegan involving the same RMK Funds in which one of the panelists stated his own conclusion in very similar way as arbitrator Dresnick in the Sturdivant arbitration. During the Bronstein arbitration, Arbitrator Blalock accused Petitioner of "Monday morning quarterbacking." Arbitrator Blalock also stated, "We are looking at this thing with the benefit of the horrendous credit crisis." The Chancery Court agreed with the Petitioner Bronstein in that case and vacated the award as requested by Petitioner Bronstein. The Order from the Chancery Court, complete with the hearing transcript, is attached as Exhibit "D."

**B.    The Award Must Be Vacated Under the FAA Due to the Misconduct of the Arbitrators in Refusing to Hear Evidence.**

The parties to arbitration must be afforded a fundamentally fair hearing. Bias in refusing to consider certain evidence could result in an unfair hearing, so, pursuant to § 10(a)(3), the Court may vacate an award if a party to an arbitration proceeding has not been given an opportunity to present evidence on the merits of the dispute. <u>Andorra Services, Inc. v. Vanfleet, Ltd.</u>, 335 Fed. Appx. 622 (3d Cir. 2009); <u>see also</u> <u>Teamsters Local 312 v. Matlack, Inc.</u>, 118 F.3d 985, 995-96 (3d Cir. 1997) (listing cases)("It has become axiomatic that a district court may

vacate an award if a party to an arbitration proceeding has not been given notice and opportunity to present arguments and evidence on the merits of the dispute.").[4] The Sixth Circuit has explained this requirement as follows: "Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing. Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co., 205 F.3d 1340, at *6 (6th Cir. 2000); see also Standard Tankers (Bahamas) Co., Ltd. v. Motor Tank Vessel, Akti, 438 F. Supp. 153, 156 (E.D.N.C. 1977)("To amount to a procedural error which mandates vacation of the award, the actions of the panel must deprive the defendant of a fair hearing when viewed as a whole").

"Generally, the parties have the right to introduce competent evidence in support of their respective claims, and the arbitrators have no authority to refuse to hear it, since the refusal to hear such evidence may result in the denial of a full and fair hearing." Corpus Juris Secendum 6 Arbitrators § 124. Arbitrators have wide latitude in conducting arbitration proceedings and are not bound by formal rules of evidence. Hoteles Condado Beach etc. v. Union De etc., 763 F.2d 34, 38 (1st Cir. 1985); Shearson Hayden Stone, Inc. v. Liang, 653 F.2d 310, 313 (7th Cir. 1981) ("Arbitrations are not governed by the rules of evidence."). FINRA Rule 12604 specifically states that "the panel is not required to follow state or federal rules of evidence." "In handling

---

[4] Examples of procedural irregularities that have merited district court vacation of arbitration awards include Textile Workers Union of America v. American Thread Co., 291 F.2d 894, 901 (4th Cir.1961) (affirming denial of union's enforcement request because arbitrator went outside record and based decision on findings from a different arbitration proceeding); Harvey Aluminum v. United Steelworkers of America, 263 F.Supp. 488 (C.D.Cal. 1967) (arbitration award remanded where arbitrator refused to admit certain evidence in rebuttal without giving parties warning about application of evidentiary rules); Electrical Workers, 615 F.Supp. at 67-68 (vacating arbitration board award and remanding because neutral arbitrator rendered decision without obtaining the signatures of the partisan arbitrators, so that there was a "lack of evidence of any significant decision-making process by the majority of the board").

evidence an arbitrator need not follow all of the niceties observed by the federal courts." Bell Aerospace Co. v. Local 516, UAW, 500 F.2d 921, 923 (2d Cir. 1974). Arbitrators may admit evidence even if it would be unduly prejudicial if admitted in court. See Bowles Financial Group v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1013 (10th Cir. 1994).

The fairness and impartiality required by the FAA was not afforded to the Sturdivants at the Arbitration. The Award in this case should be vacated due to the fact that the Sturdivants were denied a fundamentally fair hearing by Panel's misconduct in refusing to consider the Regulatory Material and without giving the Sturdivants a fair opportunity to present the material to the Panel. The Panel compounded the prejudice to the Sturdivants by making its decision to exclude the Regulatory Material without allowing counsel present oral argument on the legal merits applicable to the admissibility of the Regulatory Material. Arbitrator Dresnick demonstrated his bias by stating that he was ready to rule on Morgan Keegan's Motion to Exclude Regulatory Materials without having read or considered the parties extensive briefs on the issues.

Morgan Keegan argued that that the allegations in the regulatory charges were mere allegations and, therefore, could not be proof in the Arbitration; the Regulatory Materials were excludable as hearsay; as settlement agreements, the Regulatory Materials could not be used as proof of liability; and the probative value of the Regulatory Materials was outweighed by prejudice to Morgan Keegan. (D.E. 7–3.) Morgan Keegan and the Panel ignored the fact that the Sturdivants were not seeking to use a recitation of an administrative charge or complaint, but the findings of facts and conclusions of law that resulted from extensive investigations by these regulatory agencies. In addition, the Sturdivants were not asking the Panel to rely on the Regulatory Materials to establish liability or be relieved of their duty to establish the elements of

their claims. The Sturdivants simply wanted the opportunity to present potentially probative evidence to the Panel to consider along with all evidence applicable to their case. The Panel's failure to do so disregarded the admissibility of regulatory agencies findings of fact and conclusion of law under Federal Rule of Evidence 803(8)(C), as set forth in the Sturdivants' response to Morgan Keegan's Motion. (D.E. 7-4.)

> Rule 803(8) specifically provides an exception from the hearsay rule for the following:
>
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth. . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Federal courts have held the SEC's factual findings in a consent order, including its opinions and conclusions, are admissible under Federal Rules of Evidence 803(8)(C), the public records and reports exception. See, e.g., Option Resource Group v. Chambers Development Co., 967 F.Supp. 846, 851 (W.D. Pa., 1996); see also S.E.C. v. Pentagon Capital Mgmt. PLC, 2010 WL 985205, at *3–4 (S.D.N.Y. Mar. 17, 2010).

Although the Panel does decide what evidence to admit at the hearing, the FINRA procedure is to broadly allow evidence for whatever it is worth rather than restricting full development of the evidentiary record. In this case, the law is clear that the Regulatory materials, including findings of fact and conclusions of law, were relevant and admissible, counsel for the Sturdivants tried to bring that legal principal to the attention of the Panel, but the Panel did not apply the law and admit the Regulatory Materials. There was no argument, indication, or decision by the Panel that the heavily negotiated terms of Regulatory Materials were in any way untrustworthy.

Finally, there was no potential for prejudice to Morgan Keegan by the Panel's inclusion of the Regulatory Materials in the record. The Panel was free to disregard the Regulatory Materials, limit their evidentiary weight, or defer to the findings of the government agencies. In order to do so, however, the Panel was required by its own rules of procedure and the Federal Rules of Evidence to first admit the evidence. As a result, the Panel acted in manifest disregard for the law and the Award must be vacated and the Sturdivants granted a new hearing before an unbiased panel.

The Sturdivants were prejudiced by the Panel's, and specifically Arbitrator Dresnick, failure to consider the competent evidence–the Regulatory Materials–in support of their claims. The Regulatory Materials would have provided valuable insight to the Panel into Morgan Keegan's misleading marketing with respect to the RMK Funds. The Regulatory Materials are evidence already in the public record of findings by the governmental and regulatory agencies charged with enforcement of securities laws and regulations. The Panel should have followed well accepted practice in this Arbitration and allowed and considered the Regulatory Materials along with all other evidence presented to the Panel. It failure to do so deprived the Sturdivants to present evidence material to their claims against Morgan Keegan and, thus, deprived them of a fundamentally fair arbitration. Therefore, the Award should be vacated and the Sturdivant be granted a rehearing.

    **C.**    **The Award Must be Vacated under the FAA due to Evident Partiality.**

The view of evident partiality is that "to invalidate an arbitration award on the grounds of bias, the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir. 1989): This is an objective standard. Nationwide Mut. Ins. Co v. Home

Ins. Co., 429 F.3d 640, 645 (6th Cir. 2006). The courts have held that bias may be evidenced by "financial interest of other loyalty to one side of the dispute." See, e.g., Cellular Radio Corp. v. OKI Amer., Inc., 664 A.2d 357, 360–61 (D.C. 1995). "An arbitrator's failure to reveal facts may be relevant in determining evident partiality under 9 U.S.C. § 10(a)(2), but that mere nondisclosure does not in itself justify vacatur." Positive Software Solutions, Inc. v. New Century Mortgage Corp., 476 F.3d 278, 282 (5th Cir. 2007). An arbitrator's failure to disclose must involve a "significant compromising connection to the parties." Id.

The conduct of the Panel in this case, in particular Arbitrator Dresnick and Chairman Kalish over the course of the arbitration would lead a reasonable person to the conclusion that the Panel was not impartial and that the Panel was in favor of Morgan Keegan and against the Sturdivants.

Evident partiality on the Part of the Panel against the Sturdivants is specifically demonstrated in this case by the following facts: (1) prior to oral argument at the hearing on the Motion, Arbitrator Dresnick indicated that he did not have any of the pleadings related to the Motion but was ready to make a ruling; (2) the Panel refused to allow the Sturdivants to present case law on point clearly demonstrating that the Regulatory Materials were admissible in the Arbitration; (3) the exclusion of the Regulatory Materials; (4) comments made during the arbitration by the arbitrators, both on and off the record, and (5) in its Award, the Panel denied and dismissed with prejudice all of the Sturdivants' claims against Morgan Keegan despite the fact that the Sturdivants demonstrated to the Panel substantial losses attributable to Morgan Keegan's failure to supervise, misrepresentation and omissions, unsuitable investments, negligence, vicarious liability, breach of contract, breach of fiduciary duty, and Morgan Keegan's violations of FINRA rules.

Evident partiality of the part of Arbitrator Dresnick is demonstrated by his failure to disclose his extensive involvement with mortgage backed securities like the RMK Funds. If fact, at one point, he was the president of a New York Stock Exchange subsidiary that placed $1 billion per year in real estate debt. FINRA Rule 12408 requires potential arbitrators to disclose any existing or past financial, business, professional, or other relationship or circumstance that might preclude the arbitrator in question from rendering an objective and impartial determination. Arbitrator Dresnick certainly had to have bias towards Morgan Keegan and the RMK funds as a broker of these failed financial products.

D.  **The Award Must Be Vacated Under the FAA Due to the Panel's Manifest Disregard for the Law.**

The Panel's refusal to admit for its consideration the Regulatory Material exhibited manifest disregard for the law. A district court may vacate an arbitration decision that flies "in the face of established legal precedent" in manifest disregard of the law. An arbitration panel acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it." Nat'l Renal Alliance, LLC v. Gaia Healthcare Sys., LLC, 2011 WL 465856 (M.D. Tenn. Feb. 3, 2011). The Panel exhibited manifest disregard for the law by granting Morgan Keegan's Motion in Limine and excluding the Regulatory Material submitted by the Sturdivants. The Regulatory Materials were clearly admissible under the applicable rules of evidence. In addition, the Regulatory Materials were not cumulative of any other evidence and were not prejudicial to Morgan Keegan. The law is clear that the excluded Regulatory Material was admissible and the arbitrators consciously chose not to apply the law. As a result, the Award must be vacated.

18

## IV.     CONCLUSION

Based on the foregoing, Respondent/Counter-Petitioners the Sturdivants pray that this court dismisses Morgan Keegan's Petition to Confirm Arbitration Award and enters an order vacating the Award and remanding the case back to FINRA to be heard by a new, unbiased and impartial panel for the reasons set forth herein.

Respectfully submitted,

HARRIS SHELTON HANOVER WALSH PLLC


By:     s/ Christopher Campbell
Christopher S. Campbell *Pro Hac Vice*
J. Douglas Foster MS Bar No. 100641
Laura S. Martin TN Bar No. 26457
2700 One Commerce Square
Memphis, Tennessee 38101-2555
Telephone 901-525-1455

LEDBETTER & ASSOCIATES, P.A.
Dale Ledbetter No. 008953
333 N. New River Dr. E. #1500
Fort Lauderdale, FL 33301
Telephone 954-540-3642


## **CERTIFICATE OF SERVICE**

I certify that on June 1, 2012, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

     s/ J. Douglas Foster
J. Douglas Foster