IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MORGAN KEEGAN & COMPANY, INC.                          PLAINTIFF

v.                          CIVIL ACTION NO. 3:11cv638-DPJ-FKB

YGONDINE STURDIVANT, et al.                          DEFENDANTS

ORDER

This proceeding under the Federal Arbitration Act is before the Court on Plaintiff's Petition to Confirm FINRA Arbitration Award [1] and Defendants' Counter-Petition to Vacate Arbitration Award and Remand to FINRA for Rehearing [7]. Because Defendants have not established any of the limited bases for vacating an arbitration award, the Petition to Confirm should be granted and the Counter-Petition to Vacate and Remand should be denied.

I.      Facts and Procedural History

Pursuant to a binding arbitration agreement between the parties, Defendants Mike and Ygondine Sturdivant filed an arbitration claim against Plaintiff Morgan Keegan with the Financial Industry Regulatory Authority ("FINRA") related to their investment in Morgan Keegan bond funds. Following the arbitration hearing a panel of three FINRA arbitrators entered an award denying and dismissing with prejudice the Sturdivants' claims. Morgan Keegan thereafter filed the instant lawsuit, seeking an order under 9 U.S.C. § 9 confirming the arbitration award. In response, the Sturdivants moved, under 9 U.S.C. § 10, for an order vacating the arbitration award.[1]

---

[1] The Sturdivants also rely on the Tennessee Uniform Arbitration Act ("TUAA"), noting that the account agreements "call for Tennessee law to apply." Defs.' Mem. [22] at 3 n.2; *see* Tenn. Code Ann. § 29-5-313. And while the account agreement does contain a general choice of law provision that provides that the "agreement and its enforcement shall be governed by the laws of the State of Tennessee," it makes no specific mention of the TUAA, instead referencing

II.    Standard

Section 9 of the Federal Arbitration Act requires the Court, upon motion of a party, to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; *see Householder Grp. v. Caughran*, 354 F. App'x 848, 850 (5th Cir. 2009) (per curium) (citing *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).  Section 10 of the FAA provides the exclusive grounds for which a Court may vacate an arbitration award:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see Householder Group*, 354 F. App'x at 850 (explaining that the statutory grounds for vacatur are exclusive).

III.    Analysis

The Sturdivants argue that the arbitration panel showed "evident partiality" in favor of

---

"federal law as applicable, including the Federal Arbitration Act." Compl. [1] Ex. 1, at MK-STURDIVANT001632.  It is well-settled "that a choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 342 (5th Cir. 2004) (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998)).  Because the account agreement "does not expressly reference the TUAA, and its arbitration clause does not modify or replace the FAA's rules," the FAA provides the standard for vacatur. *Id.*

Morgan Keegan and that the arbitrators were "guilty of misconduct" in several respects. 9 U.S.C. § 10(a)(2)-(3). They also claim misconduct.

### A. Evident Partiality

The Sturdivants allege that one of the three arbitrators, David Dresnick, was evidently partial to Morgan Keegan because he had "extensive involvement with mortgage backed securities" like those at issue in the Sturdivants' claims but failed to disclose that involvement. Defs.' Mem. [22] at 18. They also assert that the panel's "evident partiality" is demonstrated by the fact that "the Panel denied and dismissed with prejudice all of the Sturdivants' claims against Morgan Keegan despite the fact that the Sturdivants demonstrated to the Panel substantial losses attributable to Morgan Keegan's [conduct]."[2] *Id.* at 17.

To establish "evident partiality" sufficient to vacate an arbitration award, the Sturdivants must show either actual bias or that the arbitrator(s) failed to disclose a "significant compromising connection to the parties." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282 (5th Cir. 2007) (en banc). "To establish evident partiality based on actual bias, the party urging vacatur must produce specific facts from which 'a reasonable person would have to conclude that the arbitrator was partial to one party.'" *Householder Group*, 354 F. App'x at 852 (quoting *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006) (citations and internal quotations omitted)). In failure to disclose cases, "an award may not be vacated because of a trivial or insubstantial prior relationship

---

[2] The Sturdivants also argue that the entire panel's "evident partiality" was demonstrated by a series of alleged errors that form the basis for their claim of arbitrator misconduct. Defs.' Mem. [22] at 17. The Court will address each alleged error in its consideration of the arbitrator misconduct claim.

3

between the arbitrator and the parties to the proceeding." *Positive Software Solutions, Inc.*, 476 F.3d at 283. Instead, a party seeking vacatur must establish a "reasonable impression of bias" with regard to the facts that were not disclosed. *Id.* The Sturdivants have not established "evident partiality" on the part of Dresnick or the arbitration panel.

1. Dresnick

As to Dresnick, Defendants allege that he failed to disclose "that his professional experience includes substantial involvement with mortgage backed securities." Defs.' Mem. [22] at 9. As an initial matter, Dresnick's experience with securities similar to the investments at issue in the Sturdivants' claims is not the same as a prior relationship with a party and would not have disqualified him from serving as an arbitrator. As the Fifth Circuit has noted, requiring vacatur under circumstances where a potential arbitrator has relevant experience

> would rob arbitration of one of its most attractive features apart from speed and finality—expertise. Arbitration would lose the benefit of specialized knowledge, because the best lawyers and professionals, who normally have the longest lists of potential connections to disclose, have no need to risk blemishes on their reputations from post-arbitration lawsuits attacking them as biased.

*Positive Software Solutions, Inc*, 476 F.3d at 285–86. Absent a showing of "a concrete, not speculative impression of bias," which the Sturdivants have not established, any non-disclosure here does not warrant vacatur. *Id.* at 286.

More significantly, Dresnick actually disclosed the very experience the Sturdivants say he withheld. According to the Sturdivants, Dresnick failed to disclose, among other things, that "he was the president of a New York Stock Exchange subsidiary that placed $1 billion per year in real estate debt." Defs.' Mem. [22] at 18. But in the arbitration disclosure form that FINRA provided to the parties in advance of the arbitration, Dresnick's background information stated:

4

> **ARBITRATOR BACKGROUND INFORMATION**
>
> Mr. Dresnick has had over 25 years of experience as the President of a development company, three mortgage banking firms, a New York Stock Exchange subsidiary that placed $1 billion per year, in real estate debt. Executive Vice President of a privately owned real estate syndication company, President of an FDIC insured institution and the Senior Executive and Chief Lending/Credit Officer for several large insured depository companies.

Whitman Aff. [25] Ex. 4.

The Sturdivants had notice of Dresnick's experience with mortgage-backed securities, yet they failed to object to his presence on the arbitration panel, effectively waiving their argument as to his participation. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002) ("[O]bjections to the composition of arbitration panels must be raised 'at the time of the hearing.' [F]ailure to object at the hearing constitutes waiver." (quoting *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987))). The Sturdivants have established neither bias nor a failure to disclose information that raises a reasonable impression of bias. Vacatur for Dresnick's "evident partiality" is therefore unwarranted.

    2.    The Panel

The Sturdivants' argument about the panel's "evident partiality" is even more attenuated. The Sturdivants essentially argue that the panel demonstrated evident partiality by ruling against them. An adverse ruling does not demonstrate evident partiality, and it is not for the Court to decide whether the arbitrators reached the correct result. *Wanken v. Wanken*, 451 F. App'x 319, 322 (5th Cir. 2011) (concluding that "the fact that the panel did not grant [plaintiff] the relief he sought" did not establish evident partiality); *see Householder Grp.*, 354 F. App'x at 851 ("[W]e do not have authority to conduct a review of an arbitrator's decision on the merits." (citations

omitted)). There is no evidence that the panel was actually biased against the Sturdivants and no basis for vacatur under 9 U.S.C. § 10(a)(2).

B.  Arbitrator Misconduct

The Sturdivants allege three separate instances of arbitrator misconduct: (1) the panel was unprepared for an evidentiary hearing, (2) Arbitrators Dresnick and Marc Kalish made inappropriate comments and posed improper questions to a witness, and (3) the panel improperly excluded evidence offered by the Sturdivants. In order for misconduct to justify vacatur, there must have been a "fundamental error" that ultimately "deprived [the parties] of a fair hearing." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1023 (5th Cir. 1990).

1.  Hearing Preparedness

Before the final arbitration hearing, Morgan Keegan filed a motion to exclude evidence. The Sturdivants responded, Morgan Keegan replied, and the Sturdivants filed a sur-reply. After receiving the briefs, the panel addressed the matter during a lengthy pre-hearing conference call. The Sturdivants assert that at the hearing, "Arbitrator Dresnick indicated that he did not have any of the four briefs related to the Motion, but understood the issues and was ready to make a ruling." Defs.' Mem. [22] at 7. The Sturdivants provide no record evidence that Dresnick was unprepared for the hearing, and counsel for Morgan Keegan does not recall Dresnick so stating. Pl.'s Resp. [24] at 4 n.3; *see Wanken*, 451 F. App'x at 322 (concluding that party did not meet burden to establish propriety of vacatur when he failed to provide any record evidence to support conclusory allegations). Moreover, as Morgan Keegan points out, the panel's written decision granting Morgan Keegan's motion following the hearing states that they "considered the written motion, Claimants' response, Respondent's reply, and Claimant's [sic] sur-reply." Moses Aff.

6

[19] Ex. 7 at 2. The Sturdivants have failed to demonstrate Dresnick's alleged unpreparedness; the allegation therefore provides no basis for vacatur.

        2.        Comments and Questions of Witnesses

Again without citation to record evidence, the Sturdivants complain that Dresnick, "[o]n at least two occasions . . . sp[oke] to the other Panelists about the case being nothing more than a result of 'the market.'" Defs.' Mem. [22] at 11. They assert that this shows Dresnick's "obvious bias," which deprived them of a fair hearing. *Id.* The failure to support the allegation with evidence alone is dispositive of this point. *See Wanken*, 451 F. App'x at 322. Moreover, the Court agrees with Morgan Keegan that, even if Dresnick made the observation, it was nothing more than "an unremarkable comment, not evidencing any bias." Pl.'s Resp. [24] at 2. It certainly is not the type of fundamental error that would justify vacatur.

The Sturdivants also take issue with the manner in which Arbitrator Kalish questioned the Sturdivants' expert witness. The relevant testimony was as follows:

> CHAIRMAN KALISH: Isn't the point of your—your testimony then, these were not wise investments as opposed to—but what we have to figure out is what was disclosed, what was disclosed adequate to inform the Sturdivants as they existed at that time—
>
> A: Right
>
> CHAIRMAN KALISH: . . . . regarding the investments they were making? Not whether—because if these were—if we knew back in 2005 that these were as bad as you're saying they were, one would hope that somebody would step in and say, "You can't sell these anymore." But nobody did that. These are all looking at it saying, "Now that we know what we know, nobody should have invested in these things."
>
> A: Not at all. I don't think I mean to be disagreeable at all. But if you look at the slide directly above the one you're looking at right now, the slide 40, I've got two quotes from 005 right there. One from Alan Greenspan that talks about how the,

7

> if I may, "The risk per dollar notion on that of the first loss or equity tranche can be 30 or 40 times the risk per dollar of the senior tranche." So that—that—that the preference share in this Webster CDO is 30 or 40 times as risky as the senior tranche was known in 2005 and has no—
>
> CHAIRMAN KALISH: I understand. That goes to the adequacy of disclosures as opposed to whether or not Mr. Kelsoe made good or bad investment decisions in buying these things.
>
> A: Well, absolutely. I am not, and nothing I said today or will say is questioning a portfolio management decision. I'm not testifying about portfolio management issues. I'm saying this is what is in the fund. You'll look at the documents and determine whether that were—those risks were disclosed, but this is clearly the risk in the funds known in 2005.

Whitman Aff. [25] Ex. 6, Tr. Excerpts, Vol. 2 at 162:5—163:19. There is nothing objectionable about the foregoing exchange. Kalish simply clarified that the expert's opinion related to the adequacy of Morgan Keegan's disclosures, and was not intended as hindsight review into the wisdom of the investments purchased in 2005. Kalish's question merely permitted the expert to clarify that he was "not testifying about portfolio management" and put his testimony in the proper context for the panel. Kalish's questioning of McCann was not a fundamental error of fairness and provides no basis for vacatur.

      3.      Excluded Evidence

The Sturdivants' final argument for vacatur is that the panel's improper exclusion of certain evidence resulted in an arbitration hearing that was fundamentally unfair. Specifically, they say the panel should have denied Morgan Keegan's motion in limine, which sought exclusion of regulatory charges filed by four state securities commissioners against Morgan Keegan, along with settlements Morgan Keegan entered into in those matters. The settlement agreements contain a number of findings made by the regulators following their investigation

8

into the funds at issue in the Sturdivants' claim. The panel granted Morgan Keegan's motion in limine, concluding that "the regulatory materials would be cumulative" in light of the fact that the Sturdivants "intend to still offer their own evidence of alleged wrongdoing," that they "deal with many matters that are not relevant to the investments at issue in the case," and "that the introduction of those materials would be unduly prejudicial and that the prejudice would greatly outweigh any probative value." Counter-Petition [7] Ex. E, Panel Order at 1–2.

Arbitrators have broad discretion in making evidentiary rulings, and the Court generally does not review those rulings. *Parker v. J C Penney Corp.*, 426 F. App'x 285, 289 (5th Cir. 2011).

> "The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and argument. An evidentiary error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing."

*Householder Grp.*, 354 F. App'x at 851 (quoting *Householder Grp. v. Caughran*, 576 F. Supp. 2d 796, 802 (E.D. Tex. 2008)).

In light of the deference afforded to arbitrators' evidentiary rulings, the Court cannot say that refusing to let the Sturdivants put on proof of regulatory proceedings deprived them of a fair hearing. The Sturdivants' claim related to their purchase of Morgan Keegan securities and alleged representations made to them in connection with that purchase. The arbitration panel allowed them to adduce evidence in support of their claim, and there was no fundamental error in preventing the Sturdivants from attempting to bolster their claim with the conclusions of regulatory bodies that Morgan Keegan generally engaged in "misleading marketing with respect to the RMK Funds." Defs.' Mem. [22] at 16. The Sturdivants have not established arbitrator

9

misconduct sufficient to justify vacatur, and their petition to vacate therefore will be denied.[3]

C. Request for Attorneys' Fees

In its reply brief [24], Morgan Keegan asks the Court, pursuant to a provision in the contract between the parties, for an award of attorneys' fees. But this request is embedded in a responsive pleading to a motion and therefore does not comply with Local Rule 7(b). L.U. Civ. R. 7(b) ("Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule."). Because it is not presented in the form of a motion, the Court will not consider Morgan Keegan's request for an award of attorneys' fees.

IV. Conclusion

The Court has considered all the parties' arguments. Those not addressed would not change the result. Defendants' Counter-Petition to Vacate Arbitration Award and Remand to FINRA for Rehearing [7] is denied, and Plaintiff's Petition to Confirm FINRA Arbitration Award [1] is granted. This case is hereby dismissed with prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 24th day of August, 2012.

                              s/ *Daniel P. Jordan III*
                              UNITED STATES DISTRICT JUDGE

---

[3] It is worth noting that the Sturdivants' attorney during the arbitration proceeding had high praise for the panel and its decisions. At the end of his closing statement, counsel for the Sturdivants remarked, "I—I just cannot, again, praise highly enough the work of this panel, the decisions you've made, the way you have controlled both sides of the table." Moses Aff. [19], Ex. 2, Tr. Excerpts, Vol. 5 at 1367. These statements belie the post-hearing complaints of misconduct and evident bias.